### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **ERNEST LOGAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 5:15-cv-01674-CLS** |
| ) | |
| **HUB GROUP TRUCKING, d/b/a** ) | |
| **COMTRAK LOGISTICS, INC.,** ) | |
| **CHERYL BOWIE, FTS FLEET** ) | |
| **SERVICES, L.L.C., STEVE HESTER,** ) | |
| **and LINDSEY MARTIN** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER DISMISSING FEWER THAN ALL DEFENDANTS

This action is before the court on the "Motion to Dismiss, or, in the Alternative,

for Summary Judgment," filed by defendants Hub Group Trucking and Cheryl

Bowie.[1]  Defendants argue that plaintiff's claims are barred by the applicable statutes

of limitations, and, therefore, should be dismissed for failure to state a claim upon

which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In support of their motion,

defendants state the following facts:

1.   The Plaintiff filed a Complaint against Hub Group, Bowie, and
     three other Defendants on September 24, 2015.  As to Hub Group
     and Bowie, the Plaintiff is asserting claims for defamation and

---

[1] Doc. no. 14.

libel *per se* (Count I); negligence/wantonness/willfulness/recklessness (Count III); invasion of privacy (Count IV); and conspiracy (Count V).  (Doc. 1).

2.      The Plaintiff contends that Hub Group, Bowie, and the other Defendants disseminated false information about him in an effort to "foul" his opportunity to obtain employment as a commercial truck driver.  (Doc. 1).

3.      Defendant Hub Group is not identified correctly in the complaint. The correct name of Defendant Hub Group is Hub Group Trucking, Inc. ("Hub Group Trucking").  It was formerly known as Comtrak Logistics, Inc. ("Comtrak").

4.      Comtrak received an owner-operator application from the Plaintiff on or around April 18, 2013.  Pursuant to the Federal Motor Carrier Safety Regulations, Comtrak issued work verification requests to companies for which the Plaintiff previously worked as identified by him in his application. (Affidavit of Cheryl Bowie, attached hereto as exhibit "1").

5.      One of the companies for which the Plaintiff previously worked responded to Comtrak on or around April 23, 2013, that the Plaintiff had refused to submit to a random drug test during the course of his performance of services for the company.  (Exhibit "1").

6.      As certain information contained in the response from the company was inconsistent with the information the Plaintiff provided to Comtrak in his owner-operator application, Comtrak elected to terminate the Plaintiff as an owner-operator.  (Exhibit "1").

7.      Comtrak submitted the information concerning the Plaintiff's work history with Comtrak   — including the reason for his

> termination — to HireRight which generates DAC Reports[2] on commercial truck drivers.  The DAC Report concerning the Plaintiff reflects that Comtrak submitted the information on May 3, 2013.  (Exhibit "1").

Doc. no. 14 (Motion to Dismiss, or, in the Alternative, for Summary Judgment), at

ECF 2-3 (footnote in original).[3]

"While Alabama law governs the *length* of the limitations period, federal law

determines *at what point the limitations period begins to run*."  *Smith v. Duff &*

*Phelps, Inc.*, 891 F.2d 1567, 1571 (11th Cir. 1990) (citing *Durham v. Business*

*Management Associates*, 847 F.2d 1505, 1508 (11th Cir. 1988)) (in turn citing

*Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1531 (11th Cir. 1987)))

(emphasis supplied).  "Under federal law, the statute of limitations begins to run

'when the plaintiff discovers, or in the exercise of reasonable diligence should have

discovered the alleged violations.'"  *Smith*, 901 F.2d at 1571 (quoting *Durham*, 847

F.2d at 1508)).

---

[2] DAC Reports contain summaries of a commercial truck driver's work history.

[3] "ECF is the acronym for Electronic Case Filing, a filing system that allows parties to file and serve documents electronically."  *Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009).  Bluebook Rule 7.1.4 allows citation to "page numbers generated by the ECF header."  *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing The Bluebook: A Uniform System of Citation R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.* Eds., 19th ed. 2010)).  Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination."  *Wilson*, 772 F. Supp. 2d at 257 n.5.  Thus, unless stated otherwise, this court will cite to the original pagination in the parties' pleadings.  When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

Under Alabama law, "[a]ll claims of libel or slander must be brought within two years."  Ala. Code § 6-2-38(k) (1975) (alteration supplied).  Moreover, "[a]ll claims of injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."  Ala. Code § 6-2-38(l) (1975) (alteration supplied).  The Alabama Supreme Court has construed § 6-2-38(l) as applying to negligence and wantonness claims.  *See Ex parte Tate & Lyle Sucralose, Inc.*, 81 So. 3d 1217, 1220 (Ala. 2011) (negligence); *Ex parte Capstone Building Corp.*, 96 So. 3d 77, 86 (Ala. 2012) (wantonness).  Finally, although this court has not located any Alabama authority specifying which Alabama Code provision applies to privacy-related torts, the Eleventh Circuit, applying Alabama law, has held that § 6-2-38(l) applies to invasion of privacy claims.  *See Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007).

Defendants state,

> Plaintiff alleges that Hub Group and Bowie defamed him by disseminating information concerning the circumstances of his termination to Hire Right, which, in turn, generated the DAC Report referenced in the complaint.  HireRight received the information from the Defendants on May 3, 2013 which is the date on which the statute of limitations for the defamation and libel claims began to run.  Plaintiff's September 24, 2015 complaint was therefore filed over four months late and, accordingly, his defamation and libel claims are due to be dismissed.
>
> . . . .

4

> [T]he Plaintiff contends that Hub Group and Bowie were negligent and/or wanton in submitting information concerning his work history to HireRight. He is claiming damages due to the fact that he has not been able to find employment as a truck driver since the information was submitted. Again, HireRight's records reflect that it received the information from Hub Group on May 3, 2013. Based on the allegations in the Plaintiff's complaint, his negligence and wantonness claims accrued at that time. Those claims were not asserted, however, until September 24, 2015, over four months after the statute of limitations expired. They are also due to be dismissed.
>
> . . . .
>
> The Plaintiff states that the invasion of privacy occurred when Hub Group and Bowie submitted the information to HireRight. Again, that information was submitted on May 3, 2013 and, accordingly, Plaintiff's invasion of privacy claims are barred by the statute of limitations.

Doc. no. 14 (Motion to Dismiss, or, in the Alternative, for Summary Judgment), at ECF 4-5 (ellipsis and alteration supplied).

Finally, defendants claim that, because the aforementioned claims are time-barred, plaintiff's conspiracy claim also should be dismissed.[4] The Alabama Supreme Court has stated that "a conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed. If the underlying cause of action is not viable, the conspiracy claim must also fail." *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 123 (Ala. 2003) (quoting *Allied Supply Co., Inc. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991)) (internal

---

[4] Doc. no. 14 (Motion to Dismiss, or, in the Alternative, for Summary Judgment), at ECF 6.

quotation marks and citations omitted).  Plaintiff's complaint alleges that "Defendants collectively conspired to damage Plaintiff's reputation by reporting false information to both Comtrak and Plaintiff's DAC report."[5]  Thus, it appears that plaintiff's conspiracy claim is premised upon his claims of defamation, negligence/wantonness, and/or invasion of privacy, and cannot be viable if those claims are time-barred.

Plaintiff does not dispute that Counts I, III, and IV of his complaint are governed by two-year statutes of limitations, but attempts to salvage them by asserting the so-called "continuing violation doctrine."[6]  That doctrine "permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period."  *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).  The Eleventh Circuit has limited the scope of that doctrine in several ways.  As an initial matter, that Court "has distinguished between the continuing *effects* of a discrete violation and continuing *violations*. . . ." *Id.* at 1335 (emphasis and ellipsis supplied).  The doctrine also is restricted "to situations in which a reasonably prudent plaintiff would have been unable to detect that a violation had occurred."  *Id.*  In other words, "if an event or series of events should have alerted a reasonable plaintiff to act to assert his or her rights at the time

---

[5] Doc. no. 1 (Complaint), ¶ 36.

[6] *See* doc. no. 24 (Plaintiff's Response in Opposition to Motion to Dismiss), at 4.

of the violation, the victim cannot later rely on the continuing violation doctrine. . . ." *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001) (quoting *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983)) (ellipsis supplied); *see also id.* (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1432 (5th Cir. 1993)) ( holding that the continuing violation doctrine rests upon the idea that "the statute of limitations ought not to begin to run *until facts supportive of the cause of action are or should be apparent* to a reasonably prudent person similarly situated") (internal quotation marks omitted, emphasis supplied).

Plaintiff contends that he "has not alleged only one isolated instance of misconduct against defendants, but, rather, a series of continuing violations."[7]  He states that, although the harm "*began* in May of 2013," the "information submitted to HireRight has prevented [him] from obtaining employment as a truck driver on numerous occasions *since* May of 2013."[8]  Additionally, plaintiff's attorney sent a letter to defendant Hub Group Trucking (formerly known as Comtrak) on March 28, 2014, advising that entity that plaintiff "has never refused to take a drug test," and requesting that it "correct the report provided to HireRight to remove any negative entries."[9]  Under the Eleventh Circuit precedent set forth above, plaintiff cannot

---

[7] Doc. no. 24 (Plaintiff's Response in Opposition to Motion to Dismiss), at ECF 3.

[8] *Id.* (emphasis and alteration supplied).

[9] *See* doc. no. 24-1 (March 28, 2014 Letter).

benefit from the "continuing violation doctrine" simply by asserting that he still experiences difficulty in finding employment as a truck driver: that is not a *new violation*, but, rather, a *continuing effect* of defendants' original act of reporting allegedly false information to the HireRight database. Furthermore, even though plaintiff's attorney sent a letter to one of the defendants on March 28, 2014 requesting that it rectify the inaccuracies, "facts supportive of" plaintiff's causes of action "[were] or should [have been] apparent" to plaintiff long before that date. *See Hipp*, 252 F.3d at 1222.

The record does not contain the first date on which plaintiff was refused employment as a result of the allegedly false information reported by Comtrak. That date would have provided a clear, bright line for determining when plaintiff knew or should have known of facts supporting his claims. Even so, plaintiff's employment with Comtrak was terminated on some date between *April 23, 2013*, when plaintiff's previous employer reported that he had refused to undergo a random drug test, and *May 3, 2013*, when Comtrak submitted that information, as the "reason for his termination," to the HireRight database.[10] Because plaintiff earned his livelihood as a truck driver, he probably began to seek employment as a truck driver immediately

---

[10] *See* doc. no. 14 (Motion to Dismiss), at ECF 2-3. Plaintiff does not dispute the accuracy of those dates in his responsive brief.

8

or shortly after the date on which his employment with Comtrak was terminated. This court therefore concludes that plaintiff learned that defendants had submitted the allegedly false information to HireRight long before September 24, 2013, the latest date on which plaintiff could have learned of the alleged injury in order for his September 24, 2015 filing to have been timely.

In light of all of the foregoing, defendants' motion to dismiss is GRANTED. Counts I, III, IV, and V of plaintiff's complaint are DISMISSED with prejudice as to the defendants designated in the complaint as "Cheryl Bowie" and "Hub Group Trucking doing business as Comtrak Logistics, Inc." (but which counsel for those defendants alleges are correctly named "Hub Group Trucking, Inc., formerly known as Comtrak Logistics, Inc."). Claims I, IV, and V remain pending against the other defendants.[11]

**DONE** and **ORDERED** this 28th day of March, 2016.

United States District Judge

---

[11] Count III sought relief only from "Defendant Hub Group/Comtrak." *See* doc. no. 1 (Complaint), at ECF 6.